IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

M.J., a minor, by CALLIE JAMES,     )
her Mother and Next Friend,     )
     )
     Plaintiff,     )
     )
vs.     )     Case No. 15-cv-0498-MJR-RJD
     )
CARBONDALE ELEMENTARY     )
SCHOOL DISTRICT NO. 95,     )
MARILYNN ROSS, and     )
DARRYL COX,     )
     )
     Defendants.     )

## MEMORANDUM AND ORDER

**REAGAN, Chief District Judge:**

M.J., a minor, was suspended from the Carbondale Elementary School District No. 95's middle school on April 25, 2013. The principal of the school, Marilyn Ross, and the assistant principal, Darryl Cox, spoke with M.J. on the day of the suspension, and Cox ultimately decided to suspend M.J. for two days for attending and recording a fight off campus the preceding day. In 2015, M.J. sued Ross, Cox, and District 95 in federal court, claiming that all involved failed to provide her with adequate due process in connection with her suspension. M.J. maintains that Ross and Cox were biased against her, that she wasn't given proper notice by Ross and Cox concerning the grounds for her suspension, and that she wasn't given an opportunity to present her case to Cox before she was suspended. Ross, Cox, and District 95 have since moved for summary judgment, arguing that M.J. received all the process she was due. For the reasons put forth below, the defendants' motion for summary judgment will be granted.

1

## Background

In 2013, M.J. was an eighth grade student at the Carbondale Middle School in Carbondale, Illinois.  On April 24, 2013, she learned that there was going to be a fight right after school between two middle school students at the "Super Block," an athletic complex located fairly close to the school.  M.J. attended the fight with several other Carbondale Middle School students and recorded the altercation on her iPod.  The fight between the two students didn't last long, for Darryl Cox, an assistant principal at the middle school, showed up about ten minutes after it started to break it up.

At some point after the fight, seemingly during the morning or afternoon of April 25th, Cox received a phone call from an official at an Indiana school advising that a video of the Carbondale altercation had been posted on YouTube, and that the video was the subject of chatter among his students.  The video wasn't M.J.'s recording— there's nothing to suggest that she posted her iPod file on the internet—but was instead posted by another middle school student who had also attended the fight.  Cox reviewed the YouTube video, recognized M.J. and a number of other students on it, and then discussed the recording with Marilyn Ross, the middle school's principal.  After that chat, Ross and Cox had M.J. and the other students called out of class and brought to an unused classroom.  Cox queued up the recording of the fight and then turned the floor over to Ross, who began lecturing the students for attending the altercation.  Ross was agitated and upset by the students' conduct, characterized their behavior as "mob action," and told them that they could be expelled for what they did.

What happened next is a point of dispute among the parties:  Cox says that he met with each student after the viewing and gave them an opportunity to tell their side, but many of the students, M.J. among them, claim that no such meeting took place.  All of the parties to this case concede that, after M.J. and the other students viewed the video in the classroom, M.J. went to Principal Ross' office and met with Ross.  M.J.'s mother, Callie, who had been summoned to the school, was also present for this meeting.  The parties dispute whether Assistant Principal Cox was present for the entire meeting—M.J. and her mother say Cox only showed up at the end, while Ross and Cox insist that Cox was present the whole time.  Either way, during the meeting, Ross told M.J.'s mother about the fight the day before, that M.J. had attended it, and that M.J. had recorded it on her iPod.  M.J. admitted all of those points and, despite being emotional, wasn't prevented from saying anything to Ross about her conduct.  Ross characterized M.J.'s behavior as "mob action," but didn't offer any more explanation as to what that phrase meant when queried by M.J.'s mother.  Per M.J. and her mother, Cox entered the room at the end of the meeting and decided that M.J. would be suspended for two days.

A few days after M.J. was suspended, M.J.'s mother received a notice of out-of-school suspension from Assistant Principal Cox.  The letter confirmed that M.J. was being suspended for two days and that her suspension was due to her conduct on April 24, 2013—specifically that M.J. "went to a planned fight on [a] soccer field adjacent" to the Super Block, that she was "observed on [a YouTube] video recording this fight on her cell phone," and that she was scheduled to be in an after school program that day but chose to go to the fight instead.  The letter didn't explicitly characterize her conduct

as "mob action," but instead said that M.J. had committed other "major infractions," namely insubordination, a safety violation, and "other: went to a fight."

M.J. and her mother had a right under school policy to request a review of the suspension decision, and M.J.'s mother decided to exercise that right. On May 10, 2013, she sent a letter to the president of the school board, and the school board held a hearing in June 2013. M.J. didn't attend, but her mother, her mother's brother, and an attorney did instead. M.J.'s mother complained that the suspension should be lifted because M.J. wasn't given a full explanation of the charges against her before suspension was imposed and wasn't given an opportunity to respond, but the school board wasn't persuaded—it voted that a brief suspension was the right result.

Unsatisfied with the board's determination, M.J. and her mother filed suit in this Court against Ross, Cox, the superintendent of District 95, and District 95 itself, maintaining that M.J.'s due process rights were violated in connection with the suspension and in connection with her being deprived access to an extracurricular event. M.J. amended her complaint once to take the superintendent out of the case, and the extracurricular claim was later dismissed for failure to state a viable cause of action. M.J.'s case then proceeded through discovery, and District 95 and its officials have since moved for summary judgment. That motion is now before the Court for review.

## Discussion

Summary judgment is proper on one or more of a party's claims if the evidence shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. ***Archdiocese of Milwaukee v. Doe*, 743 F.3d 1101, 1105 (7th**

**Cir. 2014).**  In evaluating whether there is a genuine issue as to a material fact, the Court must construe the facts in the light most favorable to the non-movant, and draw all legitimate inferences and resolve doubts in favor of that party.  *Nat'l Athletic Sportswear, Inc.*, **528 F.3d 508, 512 (7th Cir. 2008).**  If after doing so no reasonable factfinder could find for the non-movant on his claim, summary judgment on that claim is proper; if the factfinder could rule for the non-movant on that claim, it must proceed. *Dempsey v. Atchison, Topeka, & Santa Fe Ry. Co.*, **16 F.3d 832, 836 (7th Cir. 1994).**

The defendants' arguments concerning summary judgment are simple:  they maintain that the undisputed material facts show that M.J. was given all the process that she was due before she was suspended from the middle school for two days, and that even if some of the process given to her wasn't perfect, the process M.J. received at the post-suspension hearing cured any potential defects.  It's true, as the defendants concede, that students have a protected property interest in public education provided by the state, and thus must be afforded certain procedural safeguards before that interest is taken away, even if for a brief period.  *Goss v. Lopez*, **419 U.S. 565, 581-82 (1975).**  Due process requires, in connection with a suspension of ten days or less, that the student be given oral or written notice of the charges against her, and if she denies them, an explanation of the evidence the authorities have and an opportunity to present her side of the story.  *Smith v. Town of Eaton, Ind.*, **910 F.2d 1469, 1472 (7th Cir. 1990).**  These requirements may be satisfied by an informal give-and-take between the student and the disciplinarian, preferably prior to suspension.  *Goss*, **419 U.S. at 581-82**.

5

Even construing the facts in the light most favorable to M.J., no reasonable jury could find a due process problem here.  M.J. first takes issue with the notice that she received on the day of her suspension:  she claims that she was only told that she was guilty of "mob action," and was only later informed, after the suspension, that the charges against her concerned a violation for attending a fight and for insubordination by violating the school's rules concerning attending fights.  The way she sees it, the school was required to specify exactly what rule M.J. violated to provide her with the requisite due process, and couldn't change the rule used at a later point.  That's not quite right on the law.  The procedural safeguards for a brief suspension are not extensive, *Martin v. Shawno-Gresham Sch. Dist.*, **295 F.3d 701, 707 (7th Cir. 2002)**, and consistent with that low bar, perfect notice isn't required.  While a school can't create a "moving target" when it comes to the factual conduct supporting a disciplinary charge, *Dietchweiler by Dietchweiler v. Lucas*, **827 F.3d 622, 627 (7th Cir. 2016)**, the school doesn't have to lay out with absolute specificity the rule or policy that was breached, for that would elevate the notice requirements for school suspensions to the level required for a criminal indictment, *C.R. v. Eugene Sch. Dist. 4J*, **— F.3d —, 2016 WL 4547356, at *8 (9th Cir. Sept. 1, 2016).**  Rather, all that a school need do is tell a student "what [s]he is accused of doing and what the basis of the accusation is," *Lamb v. Panhandle Cmty. Unit Sch. Dist. No. 2*, **826 F.2d 526, 528 (7th Cir. 1987)**, and the undisputed facts show that M.J. was told just that here.  M.J.'s deposition testimony makes clear that Ross and Cox played the recording of M.J. attending and recording a fight, that Ross and Cox chastised her for that conduct, and that the two-day suspension was expressly linked to

6

that conduct before it was imposed.  Once more, the undisputed facts don't suggest any "moving target" here.  Ross repeatedly characterized M.J.'s attendance at the fight with the other students as "mob action," and the post-suspension notice, while using different terms, relied on the same conduct to justify M.J.'s suspension.

Failing a notice issue, M.J. goes on to argue that Cox's decision to operate as "judge, jury, and prosecutor" with respect to her suspension creates a due process problem.  This argument, like M.J.'s last, operates on a misunderstanding of the constitutional requirements for school suspensions.  Given that the Supreme Court contemplated an informal give-and-take process for school suspensions between school officials and the student, courts have repeatedly held that there's no specter of bias merely because a single school official conducts the investigation and makes the original suspension decision.  *E.g., Jennings v. Wentzville R-IV Sch. Dist.,* **397 F.3d 1118, 1124-25 (8th Cir. 2005);** *Remer v. Burlington Area Sch. Dist.,* **286 F.3d 1007, 1012-13 (7th Cir. 2002);** *Lamb,* **826 F.2d at 529-30.**  No reasonable jury could find that Cox was biased against M.J. merely from Cox's role in investigating and deciding the suspension.[1]

M.J.'s last due process argument concerns her ability to make her case to school officials prior to her suspension—she claims that she wasn't given the opportunity to tell her story to Assistant Principal Cox and Principal Ross before she was suspended.

---

[1] M.J. also suggests that there might be an appearance of bias because Ross and Cox were both agitated when they confronted M.J. and the other students with the recording that depicted their attendance at the fight.  M.J. cites no case for the premise, and the Court hasn't found one on its own.  At the end of the day, M.J. needs to offer some evidence showing "actual bias" on the part of officials to raise a procedural problem, *Lamb,* **826 F.2d at 529-30**, and the Court is of the view that no reasonable jury could discern actual bias merely because officials were annoyed with a student's conduct.

The argument as to Ross goes nowhere, as M.J. admitted in her deposition that Ross chastised her for her attendance at the fight, that Ross characterized that conduct as "mob action," that her mother asked questions about the event, and that no one stopped M.J. from asking questions of Ross.  That's the kind of informal give-and-take that would satisfy the minimal requirements of due process.  The more problematic question is whether M.J. and her mother should have been given the opportunity to make their case to Assistant Principal Cox.  Ross conceded in her deposition that Cox made the decision to suspend M.J., and M.J. and her mother both testified that Cox didn't enter Ross' office on the day of the talk between M.J., her mother, and Ross until the end of the meeting.  If that testimony is believed—and the Court must credit it at this stage of the case—M.J. might not have been given an opportunity to present her case to her actual disciplinarian, either directly (to Cox) or indirectly (from M.J. to Ross and from Ross to Cox).  That seems to present a material issue of fact, for students are typically entitled to make their case to a disciplinarian.  *See Goss*, **419 U.S. at 584 (envisioning a give-and-take process between the "student and [the] disciplinarian").**

Regardless of this open factual point, the Court is of the view that summary judgment in favor of the defendants is still proper even if Ross and Cox flubbed the meeting, as M.J. has suffered no "procedural" prejudice.  M.J. has only raised a due process claim in this case—her beef is that she wasn't given the procedural chance to tell her story to those that decided her punishment—but the very process that she wanted was ultimately given to her by the school board.  M.J.'s mother and her lawyer both had the opportunity to dispute whether M.J.'s suspension was proper in light of

the school policies in place at the time, and despite their best efforts, the school board still concluded that the imposed suspension was the right call, for M.J. and the other students' "attendance [at] [the] pre-planned student fight should be viewed as unacceptable conduct which supported and encouraged the fight."  The board's consideration (and rejection) of M.J.'s arguments in mitigation shows that any pre-suspension defects weren't prejudicial to her, and thus her due process claim must fail. *See Dietchweiler*, **827 F.3d at 629 (taking into account "the additional layer of process [the student] received at the full suspension review hearing shortly after his suspension," and concluding that, based on that process afforded at the hearing, the student "would be unable to show that he was prejudiced by any deficiencies in the pre-suspension procedures");** *cf. Brewer v. Austin Indep. Sch. Dist.*, **779 F.2d 260, 263 (5th Cir. 1985) ("[S]chools may wish to provide appellate mechanisms to cure procedural errors that can creep into initial suspension proceedings . . . .").**  To be sure, the defendants raised this procedural prejudice point in their opening motion for summary judgment, and M.J. doesn't offer any real rebuttal to it in her response.

One closing note is in order concerning a point referenced in the defendants' motion for summary judgment—they note the possibility that M.J. is also attempting to raise a substantive due process claim concerning the viability of the suspension, over and above her procedural due process claim.  The Court doesn't discern any effort by M.J. to raise such a claim in this case—the complaint doesn't mention a substantive due process claim but only references procedural defects, and M.J. makes no argument, developed or otherwise, claiming that the case should proceed to trial in light of a

9

viable substantive due process claim against the defendants.  Accordingly, the Court won't address any substantive due process claim by way of this ruling.

### Disposition

The only claim currently remaining in this case is M.J.'s due process claim concerning her two-day school suspension.  Because no reasonable jury could find a due process violation given the undisputed material facts here, the defendants' motion for summary judgment (Doc. 31) is **GRANTED**.  The parties' recent motions *in limine* (Docs. 48, 49 & 50) are **DENIED** as **MOOT**.  The **CLERK** is **DIRECTED** to enter judgment in favor of the defendants and against the plaintiff.

**IT IS SO ORDERED.**

**DATED:  October 17, 2016**

/s/ **Michael J. Reagan**
**Chief Judge Michael J. Reagan**
**United States District Court**